UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**AKIVA BERNSTEIN** | Case: 1:20-mj-00242<br>Assigned To : Faruqui, Zia M.<br>Assign. Date : 12/3/2020<br>Description: Complaint w/ Arrest Warrant |

**STATEMENT OF FACTS**

On Monday, November 23, 2020, at approximately 6:45 PM eastern standard time (EST) a Federal Bureau of Investigation ("FBI") Washington Field Office ("WFO") Task Force Officer ("TFO") was operating in an undercover capacity ("UC"). The UC is assigned to the Metropolitan Police of the District of Columbia ("MPDC") and FBI's Child Exploitation and Human Trafficking Task Force ("CEHTTF") and was operating out of a satellite office within the District of Columbia ("DC"). The UC was using the KIK free messaging application in an effort to locate and communicate with individuals engaged in the sexual exploitation of children.

The UC conducted a search of public KIK Groups within the KIK application using keywords known to be used by individuals involved in the sexual exploitation of children. The UC subsequently located and joined a public group named ▇▇▇▇▇▇ with a display name of "Gay Gentlemen's club Public." The UC messaged the group and advised that he is a thirty five year old father.

At approximately 7:18 PM EST the UC was contacted by a KIK User with a display name at the time of Mr Dad (the user would later change the display name to "Scotty Cross") and a username of ▇▇▇▇▇▇ (herein "defendant"). The defendant advised the UC that he was not also a father, but his partner was expecting. The defendant advised that he was hoping that he could talk to the UC a little about fatherhood. The defendant asked the UC if he had any advice

for fatherhood.  The defendant then asked, "So more serious for a moment I'm super into young and I'm not sure how that will translate."

The defendant was asked if he had ever been "active with young" before and the defendant advised that he had when he was seventeen with an eleven year old.  The UC asked the defendant what he thinks he would do with his partner's child , and the defendant advised, "Molest them probably for years…unless it's a girl."

The defendant advised that he was a twenty-one–year-old male that resided in Alexandria, Virginia.  The defendant reported that he was currently living in a month-to-month apartment, and that he had just moved to the area in March 2020.  The defendant also advised that the pregnant female is not his partner, but a close friend.  The defendant reported that he would be the "god father and nanny" for the child.  The defendant forwarded a photograph to the UC of himself holding three fingers up to verify that he was a real person.

The defendant asked if the UC was active with his son, and the UC advised that he was.  The defendant then asked if the UC's wife was in the picture, and how it worked.  The UC advised that he had a nine-year-old son, and that he was only active with the nine-year-old when his wife was out of town.  The defendant then asked, "So what do you do with him?  Full penetration or is he still too young?"  The defendant also advised that he was into all "young" and "I don't have may[sic] boundaries."  The UC asked if he collected vids, and the defendant advised "Only links…Or I'll forward stuff from a group chat."

The defendant later stated, "So if things go well what are you thinking."  The UC advised, "You're so close….and it would be amazing to have a perv friend."  The defendant responded with,

"Well basically spend the night or come over for a dinner on nights when the wife is out of town maybe play maybe just get him used to the idea of me. I'm assuming he wouldn't be okay with some rando just coming in and getting busy with him. I'm also into watching."

The UC asked the defendant what kind of play he would want to do with his son, and the defendant advised, "well orla [sic] is always my default but it depends what you've done with him." The UC advised that this could happen if they meet. The UC and defendant then exchanged photographs of their faces holding three fingers up to verify they were real people.

The following day the UC and defendant spoke via KIK again and discussed not speaking to anyone else regarding their communication, and the access the UC has with his nine-year-old son. This conversation started after the defendant advised that he had spoken generally to a friend in Canada about the conversation with the UC. The defendant advised that the friend in Canada was active with minors and was a middle school teacher.

On November 24, 2020, at approximately 12:31 PM EST, the defendant forwarded the UC two videos which depicted the sexual abuse of the same prepubescent toddler. The child is observed asleep on a bed while an adult male records him, and takes his clothes off. The adult male eventually places the sleeping child's penis in his mouth, and strokes the child's penis with his fingers.

The defendant sent the UC ten videos depicting prepubescent boys engaging in sexual acts, sexual contacts, and/or lewd and lascivious displays of their genitalia. These videos included a video depicting a prepubescent child being anally penetrated by an adult male's erect

penis.  The video is one minute and ten seconds long, and the child can be heard crying or screaming during the entire video (0af720f2-0fbf-4d09-b7ce-24ea6d36b4b3).

The defendant also sent a video labeled 75d23f4c-a5d4-453c-93c2-ede7a628eda0 that also displayed a prepubescent child who appeared to be a toddler being anally penetrated by an adult male's erect penis.  The child is seen and heard crying during the entirety of the one minute and thirty eight second video.  The defendant messaged, "He's a little trooper" shortly after sending the video of the toddler crying while being anally penetrated.

The defendant and the UC continued to discuss meeting in person so that the defendant could engage in sex acts with the UC's fictional nine-year-old child.  The defendant asked if he could orally penetrate the child's anus, "throat fuck" the child while he slept, and engage in other sexual acts with the child.  The UC advised the defendant that he provides the child with Benadryl to have him fall asleep when he is active with him, and the defendant acknowledged the child would be asleep when he was engaging in sex acts or contacts with him.

The defendant advised the UC that he could meet him on December 2, 2020, at approximately 1:30 PM EST.  The defendant and UC agreed to meet at that time in front of the UC's apartment complex in the Chinatown area.  The defendant and UC agreed the purpose of the meetup was to engage in sexual acts and contacts with the UC's fictional nine-year-old child.  The defendant reported that he would be traveling from Alexandria, Virginia, and it would take approximately thirty minutes to get to the UC's apartment.

On December 2, 2020, at approximately 1:30 PM EST, the defendant advised the UC that he was on his way to the 700 block of 5th Street Northwest.  The defendant eventually arrived at approximately 2:00 PM EST, and walked through the block without making contact with the UC who was standing in front of 770 5th Street Northwest.  The UC asked the defendant if he had

just walked by him via KIK, and the defendant advised that he was nervous because there were three police cars in the area. The UC advised the defendant that the "Metro Police is right next door to my building." The defendant then asked the UC to "Come meet me around the corner sorry this is pretty nerve racking." The UC met the defendant at 5th and G Street Northwest, and asked him "Jacob?" The defendant advised he was Jacob, and asked to walk around the block to talk. The defendant then advised that he was "nervous, but excited." At this time the UC gave a prearranged arrest signal to members of CEHTTF in the area, and the defendant was taken into custody.

The defendant verbally identified himself as Akiva Bernstein DOB: (█████-1999) and advised that he resides at ████████████████████, Washington, DC. The defendant spontaneously stated as he was taken into custody that he was glad he was caught and asked how much time he would get.

The defendant was transported to the FBI's WFO, and processed for arrest. The defendant was charged at this time with a violation of 18 U.S.C. Section 2252(a)(2). The defendant was advised of his Miranda Rights, and waived his rights. An audio/video recorded interview of the defendant was then conducted at the WFO.

//
//
//
//
//
//
//

The defendant admitted during the interview that he had spoken to the UC about engaging in sexual acts and contacts with the UC's nine-year-old-son. The defendant further admitted that he had also distributed child pornography to the UC, and had traveled to the UC's location to have sexual contact with the UC's child. The defendant also advised that he had wanted to have sex with the UC, but the UC had made it clear he was not going to have sex with him. With respect to his location, the defendant reported that he had traveled to the UC's apartment from his apartment at ███████████, Washington, DC, and had not traveled from Alexandria, Virginia as he had said in the earlier conversation.

Respectfully submitted,

Thomas Sullivan
Detective,
MPD

Subscribed and sworn to before me telephonically on this 3rd day of December, 2020

HON. ZIA M. FARUQUI,
UNITED STATES MAGISTRATE JUDGE